# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                     Criminal Action No. 5:15-cr-8

DONDIE WILLIAMS,

    Defendant.

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Dondie Williams's motion to suppress evidence filed on April 10, 2015. ECF No. 21. The Government filed a response to Williams's motion on April 20, 2015. ECF No. 24. This Court held an evidentiary hearing and argument on the motion on April 24, 2015. Williams appeared in person and by his counsel Frank C. Walker, II, Esq. The Government appeared by Stephen L. Vogrin, Esq.. The Court heard testimony from Trooper Luther R. White and Corporal Eric McFarland, both of the West Virginia State Police. During the hearing, the Court admitted Government Exhibit One.

## I. INTRODUCTION

### A. Background

On November 6, 2014, Williams was a passenger in a vehicle stopped and searched by West Virginia State Police. As a result of the search, Williams was named in a one-count indictment, plus forfeiture allegation, charging him with possession with intent to distribute 280 grams or more of cocaine base, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). An initial appearance was held on March 2, 2015. Williams now moves the Court to "suppress the evidence seized from the car and any statement from the Defendant flowing from the unlawful stop." ECF No. 21 at 6.

**B. The Motion**

Defendant's motion to suppress evidence. ECF No. 21.

**C. Recommendation**

I recommend that Defendant's motion to suppress evidence be **DENIED** because reasonable suspicion supports Corporal McFarland's traffic stop of Jennifer Vensel's vehicle.

## II. FINDINGS OF FACT

On November 6, 2014, Trooper Luther R. White was conducting surveillance for an ongoing criminal investigation in the Wheeling Island area of Wheeling, West Virginia. Trooper White was dressed in civilian clothing and drove an unmarked police vehicle. While driving around Wheeling Island, Trooper White passed Kentucky Street and noticed Jennifer Vensel's vehicle parked in front of Defendant Dondie Williams's residence. From other criminal investigations and conversations with the Ohio County Prosecutor's Office, Trooper White knew that Williams, as a condition of his bond in a separate state proceeding, was not permitted to contact Vensel.

Trooper White drove around the block, and, once he returned to Kentucky Street, observed Vensel standing outside Williams's residence near her vehicle talking on a cell phone. Trooper White parked his unmarked vehicle nearby and began to "surveil [Vensel's] actions." Soon after, Vensel entered the driver side of her vehicle. Next, Trooper White saw Williams, carrying a black backpack, exit his residence and enter the passenger side of Vensel's vehicle.

Once Vensel and Williams drove away, Trooper White followed the vehicle and contacted Corporal Eric McFarland to conduct a traffic stop of Vensel's vehicle for violation of Williams's bond. However, before Trooper White could speak with Corporal McFarland, Vensel and Williams had reached Vensel's residence on Biltmore Avenue in Wheeling. Trooper White continued his

surveillance. After a period of time, Trooper White observed Williams and Vensel walk out of Vensel's residence and back into her vehicle. Williams was again carrying a black backpack. During the suppression hearing, Trooper White explained that he had the authority to arrest Williams at any time for violation of his bond. However, Trooper White stated that he did not conduct a traffic stop or any arrest because he was wearing civilian clothes and driving an unmarked police car. Further, based on Williams's criminal history, Trooper White testified that he believed it would be safer for a uniformed officer to conduct a traffic stop of Vensel's vehicle rather than arrest Williams inside a home where he could hide or attempt to run away.

Before Vensel and Williams drove away from Vensel's residence, Trooper White had established communication with Corporal McFarland. Trooper White had advised Corporal McFarland that Williams and Vensel were together – a violation of Williams's state bond. Trooper White also informed Corporal McFarland that Vensel's vehicle windows were illegally tinted. Based on this communication, Corporal McFarland parked nearby in a marked police vehicle and prepared intercept and conduct a traffic stop of Vensel's vehicle. Once Corporal McFarland observed Vensel's vehicle drive past, he confirmed that the window tint on Vensel's vehicle was "extremely dark" and initiated the traffic stop. During the suppression hearing, Corporal McFarland explained that he has stopped "countless vehicles" for illegal window tint in the past and, based on this experience, knew Vensel's vehicle was illegally tinted when he pulled the vehicle over.

During the traffic stop, Corporal McFarland ordered Vensel to leave her vehicle and sit with Corporal McFarland inside his police vehicle. Corporal McFarland spoke with Vensel and issued her a warning citation for illegal window tint. During the suppression hearing, Corporal McFarland testified that he pulled Vensel's vehicle over for two reasons: the violation of Williams's bond and

3

illegal window tint on Vensel's vehicle.

Based on a subsequent search of Vensel's vehicle, on February 4, 2015, Williams was charged with possession with intent to distribute 280 grams or more of cocaine base.

### III. MOTION TO SUPPRESS

**A. Contentions of the Parties**

Williams only challenges the officers' stop of Vensel's vehicle. Williams argues that Vensel's vehicle was stopped for pretextual reasons unsupported by probable cause. Williams contends that "[s]uch arbitrary action is unreasonable within the meaning of the Fourth Amendment and any evidence derived therefrom, including statements and physical evidence, must be suppressed." ECF No. 21 at 6. The Government argues that the traffic stop of Vensel's vehicle was supported by a reasonable suspicion of criminal activity. Further, the Government contends that Corporal McFarland had "independent probable cause to stop the vehicle based on the extremely dark window tint." ECF No. 24 at 6.

**B. Discussion**

The Fourth Amendment of the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Fourth Amendment's "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). In the context of vehicle stops, the "reasonable suspicion" standard applies. *See, e.g., id*; *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir.

2011). Whether reasonable suspicion justified a traffic stop is viewed by the totality of the circumstances. *See, e.g., United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). To meet this burden, an officer must be able to identify "specific and articulable facts which, taken together with rational inferences from those facts," establish a reasonable suspicion of criminal activity. *Terry*, 392 U.S. at 21. With this burden in mind, "[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "Any ulterior motive a police officer may have for making the traffic stop is irrelevant." *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011). Additionally, under the collective knowledge doctrine, an officer may act on the instruction of another officer "if the instructing officer had sufficient information to justify taking such action herself; in this very limited sense, the instructing officer's knowledge is imputed to the acting officer." *United States v. Massenburg*, 654 F.3d 480, 492 (4th Cir. 2011)

In this case, Corporal McFarland stopped Vensel's vehicle for two articulable reasons: (1) Williams was in violation of his state bond for being in contact with Vensel and (2) Vensel's windows were improperly tinted.

As stated previously, a traffic stop "is reasonable where the police have probable cause to

believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. Probable cause is "a flexible, common-sense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Under West Virginia law, vehicle windows must "have a light transmission of not less than thirty-five percent." W. VA. CODE § 17C-15-36a(c). To show probable cause to stop a vehicle for illegal window tint, an officer need not know the exact percentage of window's light transmission. *See United States v. Weaver*, 145 F. App'x 639, 642 (11th Cir. 2005) (unpublished) (finding that the officer's traffic stop was supported by probable cause when the officer "observed his headlights reflecting off Defendant's car and could not see the dashboard lights or driver's silhouette through the windows at close range."); *United States v. Harrell*, 268 F.3d 141, 149 (2d Cir. 2001) (holding that probable cause existed to conduct a traffic stop when an "'objectively reasonable' police officer would have suspected a vehicle's windows were illegally tinted.").

Here, probable cause existed for Corporal McFarland to stop Vensel's vehicle. During the suppression hearing, Corporal McFarland testified that the windows in Vensel's vehicle were "extremely dark" and he was unable to observe any occupants inside the vehicle because of the window's dark tint. Further, Corporal McFarland testified that throughout his career he has stopped "countless" vehicles for illegal window tint. Corporal McFarland's testimony is further corroborated by Trooper White's independent observation that Vensel's windows were illegally tinted. In his motion to suppress, Williams suggests that because officers did not cite Vensel for illegal window tinting, officers' claim that Vensel's windows were illegally tinted "is unpersuasive." ECF No. 21 at 6. However, even if an officer does not cite a driver for illegal window tint, it does not conclude that the officer did not observe an actual traffic violation. *United States v. Williams*, 336 F. App'x 376, 378 (4th Cir. 2009) (unpublished). Although Corporal McFarland did not cite Vensel for illegal

6

window tint on her vehicle, he did issue Vensel a warning citation. Thus, the traffic stop was proper because probable cause supports Coporal McFarland's belief that Vensel's windows were illegally tinted under West Virginia law.

Additionally, even if Corporal McFarland was prohibited from stopping Vensel's car for illegal window tinting, it was proper to conduct a traffic stop of Vensel's vehicle to arrest Williams for a violation of his state bond. As a condition of Williams's bond for a separate state prosecution, he was not permitted to contact Vensel. ECF No. 24-1. While conducting surveillance for a separate investigation, Trooper White observed Vensel and Williams together in Vensel's vehicle – a violation of Williams's bond. At this point, Trooper White was permitted to arrest Williams. However, because Trooper White was not in uniform or driving a marked police vehicle, he contacted Corporal McFarland to make a traffic stop instead. Under the collective knowledge doctrine, Corporal McFarland was permitted to stop Vensel's vehicle because he was following the instruction of Trooper White who had personal knowledge of the bond violation. *See United States v. Massenburg*, 654 F.3d 480, 492 (4th Cir. 2011).

Williams argues that even if he did violate his state bond, it was improper for Corporal McFarland to stop Vensel's vehicle because the bond violation was "by the passenger of [Vensel's vehicle] and not the driver." ECF No. 21 at 5. However, "either the vehicle or an occupant is . . . subject to seizure for violation of law." *Delaware v. Prouse*, 440 U.S. 648 (1979). Thus, simply because Williams was a passenger in Vensel's vehicle rather than a driver, Corporal McFarland was nonetheless permitted to stop the vehicle.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned recommends that Defendant's motion to

suppress evidence, ECF No. 21, be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, by **May 19, 2015**, file with the Clerk of the Court written objections identifying the portions of the report and recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of record. Failure to timely file objections to the report and recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation.

DATED: May 5, 2015   /s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE